UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA CHARITABLE TRUST FOR BENEFIT OF DAUGHTERS OF CHARITY OF ST. VINCENT DE PAUL – EVANSVILLE, INDIANA, OUR LITTLE ROSES FOREIGN MISSION SOCIETY, INC., JACOBS SCHOOL OF MUSIC – INDIANA UNIVERSITY, VOLUNTEERS IN MEDICINE OF MONROE COUNTY, INDIANA, and SAINT MICHAEL AND ALL ANGELS EPISCOPAL CHURCH, <br><br> Plaintiff, <br><br> vs. <br><br> TREVOR REES-JONES, <br><br> Defendant. | 1:11-cv-1559-SEB-DKL |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This matter is before the Court on Defendant Trevor Rees-Jones's ("Rees-Jones") Motion to Dismiss/Transfer [Docket No. 36], filed on December 28, 2011, pursuant to Fed.R.Civ.P. 12(b)(2) and (3) and S.D. Ind. L.R. 7.1, challenging the Court's personal jurisdiction over him in this action against him brought by Plaintiff Indiana Charitable Trust for Benefit of Daughters of Charity of St. Vincent De Paul—Evansville, Indiana, Our Little Roses Foreign Missions Society, Inc., Jacobs School of Music—Indiana University, Volunteers in Medicine of Monroe County, Indiana and Saint Michael and All Angels Episcopal Church ("Charitable Trust"). As an alternative to dismissal, Rees-Jones

seeks transfer of this case under § 1406(a) or § 1631, or pursuant to § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.

Rees-Jones's primary contention in his motion(s) is that the Charitable Trust has failed to establish that he had constitutionally sufficient minimum contacts with Indiana to make him subject to suit in this jurisdiction. He maintains that this court's exercise of personal jurisdiction over him, based as it would be necessarily have to be on the tenuous contacts alleged in the Complaint, would violate traditional notions of fair play and substantial justice.

The Charitable Trust originally filed this lawsuit in the Monroe Circuit Court on October 27, 2011, after which it was timely removed to this court on November 23, 2011. The Court has jurisdiction based on diversity of citizenship between the parties and the amount in controversy which exceeds $75,000. Because, for purposes of diversity of citizenship, a trust takes the citizenship of the trustees and because the two trustees of the Charitable Trust, Dr. Richard Schilling and James Cheney, are domiciled in states other than Texas where Rees-Jones is a citizen, the parties have made the requisite showing of federal jurisdiction. 28 U.S.C. § 1332(a) Further, because the state court action was filed in a county located within the Southern District of Indiana, removal to this district was also properly effected, pursuant to 28 U.S.C. § 1441(a).

## **Factual Background**

The Charitable Trust asserts claims against Rees-Jones for fraud, fraudulent concealment, fraudulent inducement, constructive fraud, breach of fiduciary duty and

unjust enrichment arising from a transaction whereby the Trust's assignor, Dr. Richard J. Schilling, redeemed the Schilling Trust's interest in Chief Holdings LLC ("Chief"), a limited liability company formed by Rees-Jones to acquire and develop gas properties in Texas, for more than $10 million. The Charitable Trust alleges that the Schilling Trust suffered substantial money damages as a result of that redemption in that the amount was based on a valuation of Chief of approximately $138 million, which amount was allegedly substantially less than Chief's actual value, given that Chief was sold within two years of the redemption for approximately $2.63 billion. By this lawsuit, the Charitable Trust seeks to recover millions of dollars in damages that Schilling claims he suffered. The Charitable Trust was assigned the claims alleged in the instant litigation the day before suit was filed.

Dr. Richard J. Schilling is an 84-year-old retired physician who, until approximately 1984, actively practiced medicine in Bloomington, Indiana. He graduated from the Indiana University School of Medicine in 1952, served in the Korean War, and returned to Bloomington in 1964 where he served as a practicing surgeon for twenty years. He retired in 1984 to pursue other activities, and it was at this approximate time that he first met Rees-Jones. Dr. Schilling is a trustee of both the Schilling Trust and the Charitable Trust.

Dr. Schilling and his wife currently own three residences: one in Michigan, one in Florida and one in Indiana. He was residing in Virginia when he first became an investor in "Chief," the limited liability company formed by Rees-Jones under Texas law to

acquire and develop oil and gas properties. Dr. Schilling and Rees-Jones became friends and their relationship continued over a number of years, during which time they frequently discussed issues relating to oil and gas investments. By all reports, the two men enjoyed a solid friendship for a number of years. The other trustee of the Charitable Trust, James Cheney, is a resident of Georgia.

Trevor Rees-Jones is a lawyer, whose interest shifted at some point from practicing law to acquiring and developing oil and gas properties in Texas. He has resided in Texas for nearly forty years.

The facts leading up to this litigation date back to the early 1980s and involve the ongoing business relationship and friendship between Dr. Schilling and Rees-Jones. We summarize the somewhat detailed facts laid out in the Complaint to the extent they are relevant to the issues before us, which facts remain for obvious reasons unsettled at this stage of the case.

From the 1980s through the early 1990s, the relationship between Rees-Jones and Dr. Schilling included Rees-Jones giving advice to Dr. Schilling regarding a number of oil and gas investments. In 1994, Rees-Jones decided to form a company under the name of "Chief" and sought investments from a number of his acquaintances to fund the enterprise, including Dr. Schilling. As one of Chief's initial investors, Dr. Schilling, through the Schilling Trust, invested approximately $1300 in the company and received in return a 12% equity stake in Chief. Rees-Jones was at all times the controlling officer and majority shareholder of Chief.

4

At the time the Schilling Trust invested in Chief, Dr. Schilling resided in Alexandria, Virginia, where he reportedly received Chief's formation documents. In his capacity as trustee of the Schilling Trust, Dr. Schilling often traveled to Texas to meet with Rees-Jones regarding Chief's business at the company's offices in Dallas, Texas. Throughout the time period relevant to this litigation, Dr. Schilling also spent much of his time in Florida (his current legal residence) and Michigan and, when he was in those states, he would direct Chief to send correspondence to him at those locations. Dr. Schilling also would periodically request that Chief send correspondence to him in Indiana, where dating back to 2000 he and his wife maintained a home. However, although Rees-Jones visited Dr. Schilling outside of Texas on a few occasions, he saw Dr. Schilling only in Chattanooga, Tennessee, and at Schilling's homes in Virginia and Michigan. Rees-Jones never visited Dr. Schilling in Indiana and never traveled to Indiana on business or for any other purpose.

Under Rees-Jones's management, Chief grew into a highly successful energy company, which focused on the natural gas development of a formation known as the Barnett Shale located near Forth Worth, Texas. According to Dr. Schilling's averments, in 2002 and early 2003, Rees-Jones learned through non-public sources that a new technology known as "horizontal drilling" promised enhanced benefits to the fortunes of those with natural gas interests in the Barnett, including Chief. Plaintiff contends that, in November 2003, instead of informing Chief's investors of this development, Rees-Jones sent a set of "depressed and inaccurate projections and valuations" to Chief's minority

5

investors, including to Dr. Schilling, offering them an opportunity to redeem their interests in the company. Rees-Jones sent that letter to Dr. Schilling's residence in Bloomington, Indiana, where Schilling was residing at the time.

Plaintiff alleges that, on June 1, 2004, Rees-Jones telephoned Dr. Schilling in Evansville, Indiana, where Schilling was traveling, urging him to consummate the stock redemption, but failing to inform him that Chief's prospects were on the rise. During that telephone conversation, Dr. Schilling orally agreed to redeem the Schilling Trust's full interest in Chief. In accordance with a June 1, 2004 facsimile directive from Dr. Schilling instructing Chief to send correspondence to the Schilling Trust in Glen Arbor, Michigan, Chief sent a copy of a proposed Agreement for Redemption of LLC Interest ("the Redemption Agreement") to that location. Both the Redemption Agreement and the Promissory Note stated that the Schilling Trust's address was in Glen Arbor, Michigan, and the Redemption Agreement contained a notice provision stating that "[a]ny notice or other communication required or permitted" by the Agreement should be sent to the Schilling Trust in Glen Arbor, Michigan. Upon receipt, Dr. Schilling signed the Agreement, the result of which was a payout to the Schilling Trust of more than $10 million for its minority interest in Chief. In July 2004, Chief remitted a fully executed copy of the Redemption Agreement to the Schilling Trust in Michigan.

Under the Redemption Agreement, the payments due Dr. Schilling were to be made in a series of installments over the two year period between July 2004 and June 2006, beginning with an initial payment of $2,191,320 and followed by additional

payments totaling $8,765,282. At the request of the Schilling Trust, Chief wired the initial redemption payment from its account at Texas Capital Bank to the Schilling Trust's Citibank NA account in New York City. Chief sent subsequent payments to a Bank One account designated by the Schilling Trust in San Francisco, California. No redemption payments were sent to Indiana. Chief did send twenty-four notices to the Schilling Trust advising that a monthly payment had been made. At Dr. Schilling's direction, fifteen of those notices were sent to Michigan or Florida and the remaining nine were sent to him in Indiana.

On November 15, 2005, following the execution of the Redemption Agreement, but before Chief finished paying all the required redemption payments, a press release issued announcing that Rees-Jones intended to sell Chief to the highest bidder. After the release of this news, Dr. Schilling sent written correspondence to Rees-Jones on two occasions stating that he would not have agreed to a redemption had he known that a sale of Chief was a possibility and proposing that Chief forego his final redemption payment and instead allow him to retain 30% of his original equity stake. In January 2006, Rees-Jones telephoned Dr. Schilling to communicate his refusal to accept that deal. Four months later, in May 2006, Rees-Jones announced that Chief was scheduled for sale at a price of $2.63 billion, nearly twenty times the value on which Rees-Jones had based the redemption price offered to and accepted by Dr. Schilling.

On October 26, 2011, Dr. Schilling and the Schilling Trust assigned its claims against Rees-Jones to the Charitable Trust, which has two trustees: Dr. Schilling, who is a

legal resident of Florida, and James Cheney, who is a Georgia resident. On October 27, 2011, the day after the assignment of claims was made, the Charitable Trust filed the instant cause of action against Rees-Jones in Indiana state court. The lawsuit was subsequently removed to this Court. The Charitable Trust's complaint does not allege any wrongful acts by Rees-Jones directed toward it or any of its beneficiaries. On December 28, 2011, Defendant filed his motion to dismiss on personal jurisdictional grounds, or, in the alternative, to transfer.[1]

## Legal Analysis

### I. Standard of Review – Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). When a district court rules on a defendant's motion to dismiss based on the submission of written materials, the plaintiff "need only make out a prima facie case of personal jurisdiction" and "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." Id. (internal citations omitted).

A district court may properly exercise personal jurisdiction over a non-resident

---

[1] Related litigation brought by another minority investor in Chief is ongoing in Texas state court.

defendant if a two-step analysis is undertaken and satisfied. First, the party resisting the exercise of jurisdiction must be amenable to service of process under the state's long-arm statute; second, the exercise of personal jurisdiction must comport with the due process clause of the Constitution. Id. at 779. Because Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a), "expand[s] personal jurisdiction to the full extent permitted by the Due Process Clause," we limit our inquiry to the second step of the analysis. LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 966 (Ind. 2006).

For a court to acquire personal jurisdiction over a defendant, due process requires "that the defendant have such 'minimum contacts' with the forum state as will make the assertion of jurisdiction over him consistent with 'traditional notions of fair play and substantial justice[.]'" Lakeside Bridge & Steel Co. v. Mountain State Const. Co., Inc., 597 F.2d 596, 600 (7th Cir. 1979), quoting International Shoe v. Washington, 326 U.S. 310, 316 (1945). These minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Such purposeful availment is required to ensure that defendants may reasonably anticipate what conduct will subject them to the jurisdiction of a foreign sovereign. Burger King, 471 U.S. at 472.

Personal jurisdiction may be either specific or general. A court exercises specific jurisdiction over a defendant where the cause of action arises out of or relates to a

9

defendant's purposefully established contacts with the forum state. Helicopteros Nacionals de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Burger King Corp., 471 U.S. at 472. By contrast, general jurisdiction is proper if the defendant has "continuous and systematic" contacts with the forum state. Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir.2002). Where such continuous, systematic contacts exist, the court is empowered to exercise jurisdiction over the defendant regardless of the subject matter of the action. Id. For general jurisdiction to exist, the defendant's contacts with the forum state "must be so extensive to be tantamount to [the defendant] being constructively present in the sate" such that *any* litigation involving the defendant could justly be conducted in the forum state. Purdue Research Found., 338 F.3d at 787.

Here, the Charitable Trust does not contend that general personal jurisdiction applies to Rees-Jones's contacts. Instead, it argues that specific jurisdiction applies based on Rees-Jones's purposeful direction of fraudulent communications to Dr. Schilling in Indiana. Specific personal jurisdiction is appropriate where: "the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." Tamburo v. Dworkin, 601 F.3d 693, 702 (7th Cir. 2010), cert. denied, 131 S.Ct. 567 (2010) (citing Burger King, 471 U.S. at 472). The due process clause will not permit jurisdiction to be based on contacts with the forum that are random, fortuitous, or attenuated." uBid, Inc. v. GoDaddy Group, Inc., 623 F.3d 421, 426 (7th Cir. 2010) (citing 471 U.S. at 475).

10

## II. Discussion

Plaintiff maintains that we have personal jurisdiction over Rees-Jones under the "express aiming" test set forth in Calder v. Jones, 465 U.S. 783 (1984). In that case, the Supreme Court held that, with regard to intentional torts, like those at issue in this case, a defendant's contacts are constitutionally sufficient if the alleged actions are "expressly aimed" at the forum state. See id. at 789-90. This inquiry focuses on whether the defendant engaged in: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effect would be felt – that is, the plaintiff would be injured – in the forum state." Tamburo, 601 F.3d at 702 (7th Cir.) (citations omitted); see also Calder, 465 U.S. at 788-90.

Since Calder, our research discloses that the "express aiming" requirement has been applied somewhat inconsistently by courts, with applications ranging from broad readings, requiring nothing more than wrongful conduct that is "targeted at a plaintiff whom the defendant knows to be a resident of the forum state," Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000), to more narrow readings requiring the forum state to be the "focal point of the tort." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1072 (10th Cir. 2008). In recent opinions, the Seventh Circuit has noted this tension among its own prior applications of Calder. See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Houston Metroplex, P.A., 623 F.3d 440, 445 (7th Cir. 2010); Tamburo, 601 F.3d at 704. Nonetheless, it is clear that

Seventh Circuit precedent requires not just a forum-state injury, but also "'something more' directed at that state before jurisdiction over a foreign defendant may be considered proper." Tamburo, 601 F.3d at 706. In applying Calder, the Seventh Circuit has held that "[t]ortious acts aimed at a target in the forum state and undertaken for the express purpose of causing injury there are sufficient to satisfy Calder's express-aiming requirement." Id. at 707 (citation omitted). In addition, the Seventh Circuit has emphasized that the express aiming test is merely one means of satisfying the traditional due process standard set out in International Shoe, and that defendants still must have sufficient "minimum contacts" with the forum state for personal jurisdiction to be appropriate. Wallace v. Herron, 778 F.2d 391, 394-95.

Here, Plaintiff alleges that the following communications between Rees-Jones and Dr. Schilling are sufficient to confer personal jurisdiction in this forum: (1) the November 2003 letter Rees-Jones sent to Dr. Schilling in Bloomington, Indiana, which allegedly contained affirmative misrepresentations and material omissions about Chief and its future earnings prospects; and (2) the June 2004 telephone call Rees-Jones made to Dr. Schilling in Evansville, Indiana, during which Rees-Jones allegedly failed to disclose material information about Chief's true value.[2] Plaintiff alleges that these contacts were intentional and expressly aimed at the forum state because they furthered Rees-Jones's

---

[2] Plaintiff also points to nine payment notices Chief sent to Dr. Schilling in Indiana after the Redemption Agreement was executed. However, because these notices were sent after the execution of the Redemption Agreement, they do not factor into our jurisdictional analysis as Plaintiff's alleged injury does not "arise out of" those contacts. See Burger King Corp., 471 U.S. at 473 n.15.

alleged fraudulent scheme against Dr. Schilling, an Indiana resident. Reese-Jones rejoins, first, that these communications are nothing more than random and fortuitous contacts that do not establish that he expressly aimed his actions at Indiana, and, second, that there is no evidence that he had knowledge that the Schilling Trust would be injured in Indiana.

In determining whether Defendant had sufficient contacts with the forum state to support an exercise of personal jurisdiction over him in this case, we examine the cited communications not in isolation, but in the context of Rees-Jones's and Dr. Schilling's interactions in the course of their business relationship. We accept as true that Dr. Schilling purchased a home in Indiana in 2000 where he would reside periodically. In fact, he had many residences throughout the time period relevant to this litigation, including homes in Virginia, Michigan, and Florida. Dr. Schilling does not contend, nor does the jurisdictional record support the conclusion that Indiana was his primary residence at any point. In addition to his multiple residences, he also apparently frequently traveled to various places for both personal and business purposes, including numerous trips to Texas to consult with Rees-Jones regarding his investment in Chief.

Because of this perambulant lifestyle, the pattern of engagement established between Rees-Jones and Dr. Schilling was that Dr. Schilling would inform Rees-Jones regarding his then-current location as the place he could be reached and where he wanted correspondence or other such communications to be sent. His precise location at any given time was otherwise irrelevant. It is clear, therefore, that Rees-Jones targeted the two referenced communications not at Indiana, but at Dr. Schilling and the Schilling

13

Trust, wherever they could be reached at that time. The fact that Dr. Schilling was in Indiana, where he specifically directed that the 2003 letter be sent and the 2004 telephone call be made was entirely incidental, indeed, fortuitous. Rees-Jones's contacts with Indiana were too few and too random to support a finding that he had expressly aimed at the forum in making them.

Further, we agree with Defendant that, although Plaintiff has presented evidence that Rees-Jones knew that Dr. Schilling spent time in Indiana and had purchased a home there in 2000, Plaintiff has not established that Rees-Jones acted with the knowledge that the effect of his allegedly tortious conduct would be felt in Indiana or that he acted with the specific purpose of inflicting injury there. See Mobile Anesthesiologists, 623 F.3d at 445 ("[A] defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there.").

Plaintiff maintains that the financial life of Dr. Schilling and the Schilling Trust were and are still centered in Indiana. In support of that contention, Plaintiff cites the fact that Dr. Schilling's "main" checking account and CDs are with Monroe Bank located in Bloomington, Indiana,[3] that his stockbroker is based in Bloomington, and that he has pursued charitable interests in Indiana. Even assuming all that to be true, there has been no showing that Rees-Jones was aware of those facts at the time of his allegedly tortious

---

[3] Dr. Schilling also had bank accounts in Tennessee, Michigan, Florida, Georgia, and Texas during the relevant time period.

acts. Moreover, the jurisdictional record reflects that none of the checks Chief received from Dr. Schilling or the Schilling Trust were drawn on the Monroe Bank nor were any of the redemption payments sent to the Monroe Bank.

To the contrary, the jurisdictional record shows that Rees-Jones's and Chief's financial dealings with Dr. Schilling and the Schilling Trust were centered entirely outside of Indiana. When the Schilling Trust first invested in Chief, an LLC based in Texas, the formation documents were signed by Dr. Schilling in Virginia at a time when he did not own a house in Indiana. The operative Schilling Trust Agreement and its amendments were signed in Michigan and Florida and listed Dr. Schilling's address as his home in Glen Arbor, Michigan. When the Schilling Trust made subsequent investments in Chief projects, Dr. Schilling sent checks to Chief from bank accounts located in Michigan, Colorado, and Pennsylvania, but never from a financial institution in Indiana. Finally, the Schilling Trust received its redemption profits not in Indiana, but at banks in California and New York for the benefit of an account established and maintained in Tennessee. Based on these facts, we cannot find that Rees-Jones had knowledge that his actions would cause Dr. Schilling or the Schilling Trust to suffer significant injury in Indiana. Absent such knowledge, Rees-Jones's limited contacts with Indiana are not sufficient to establish specific personal jurisdiction in this forum.

Plaintiff cites numerous cases in which courts have held that directing fraudulent communication into a state can be sufficient to establish personal jurisdiction in that forum. Pl.'s Resp. at 13-15. However, those cases in every instance are distinguishable

15

from the case at bar. Courts exercising personal jurisdiction in those cases, relied on evidence that the defendant had engaged in a lengthy period of sustained contacts directly targeting a single jurisdiction or that the defendant had knowledge that the brunt of the plaintiff's injury would be felt in the forum state because that state was clearly the plaintiff's primary residence or principal place of business. See, e.g., FMC Corp. v. Varonos, 892 F.2d 1308, 1313-14 (7th Cir. 1990) (describing a two-year period during which defendant directed telexes and telecopies solely to an office in Illinois to further a fraudulent scheme to extract payments from the Illinois corporation); Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc., 906 F.2d 276, 282-84 (7th Cir. 1990) (holding that communications sent over a year period directed exclusively to Illinois, where the defendant knew the plaintiff had its principal place of business sufficed for jurisdiction). No such evidence has been adduced here.

For the reasons detailed above, we find that Rees-Jones's actions were neither aimed at Indiana nor undertaken for the express purpose of causing injury in this forum. Based on the limited nature of his contacts with Indiana, he could not reasonably have anticipated being haled into court in the state. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Having found that Rees-Jones's contacts do not satisfy the first part of the specific jurisdiction test, we need not address whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 320.

**III. Conclusion**

For the foregoing reasons, we hold that this Court lacks personal jurisdiction over Defendant and accordingly <u>GRANT</u> Defendant's motion to dismiss. Although a court need not have personal jurisdiction over a defendant to transfer the case to a different district for incorrect venue, for the convenience of the parties and witnesses, or in the interest of justice, in this case, Plaintiff has requested that, in the event the Court declines to exercise personal jurisdiction, the case be dismissed rather than transferred so that it could pursue an appeal. We see no reason not to honor that request. Thus, final judgment shall enter accordingly.

    IT IS SO ORDERED.

Date: _____06/11/2012_____

_[signature: Sarah Evans Barker]_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jason P. Bloom
HAYNES & BOONE LLP
jason.bloom@haynesboone.com

Briana Lynn Clark
BINGHAM GREENEBAUM DOLL LLP
bclark@bgdlegal.com

Adam Doverspike
SIDLEY AUSTIN LLP
adoverspike@sidley.com

Jason L. Fulk
HOOVER HULL LLP
jfulk@hooverhull.com

Sean C. Griffin
SIDLEY AUSTIN LLP
sgriffin@sidley.com

David H. Harper
HAYNES & BOONE LLP
david.harper@haynesboone.com

John David Hoover
HOOVER HULL LLP
jdhoover@hooverhull.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Jay T. Jorgensen
SIDLEY AUSTIN LLP
jjorgensen@sidley.com

Colleen M. Lauerman
SIDLEY AUSTIN LLP
clauerman@sidley.com

Eric D. McArthur
SIDLEY AUSTIN LLP
emcarthur@sidley.com

Travis R. McDonough
MILLER AND MARTIN PLLC
tmcdonough@millermartin.com

Benjamin L. Mesches
HAYNES & BOONE LLP
ben.mesches@haynesboone.com

Alice McKenzie Morical
HOOVER HULL LLP
amorical@hooverhull.com

Amanda L.B. Mulroony
HOOVER HULL LLP
amulroony@hooverhull.com

Robert F. Parsley
MILLER AND MARTIN PLLC
bparsley@millermartin.com

David O. Tittle
BINGHAM GREENEBAUM DOLL LLP
dtittle@bgdlegal.com